**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4485-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SEAN P. MCARDLE,

     Defendant-Appellant.

_____

Argued September 17, 2018 – Decided August 29, 2019

Before Judges Messano and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-07-1338.

Elyse S. Schindel argued the cause for appellant (Kalavruzos Mumola Hartman & Lento, LLC, attorneys; Edward C. Bertucio, Jr., of counsel and on the brief; Elyse S. Schindel, on the briefs).

Ian David Brater, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Ian David Brater, of counsel and on the brief).

PER CURIAM

Following the denial of his motions to suppress evidence seized from his car and home, to exclude his post-arrest confession to police, to disclose the identity of a confidential informant (CI), and to reconsider the denial of the respective motions, defendant Sean McArdle entered an unconditional negotiated guilty plea to count three of an eight-count indictment charging him with first-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(b)(10)(a).[1] On June 9, 2017, in accordance with the plea agreement, he was sentenced to a flat seven-year term of imprisonment, and the remaining charges in the indictment were dismissed.[2] The charges stemmed from a CI's tip that defendant was a "bulk-level distributor of marijuana" who used large duffel bags to transport marijuana to distribution locations. As a result, law enforcement officers conducted a motor vehicle stop

---

[1] Defendant pled guilty the day after his trial began.

[2] The remaining charges consisted of two counts of fourth-degree possession of CDS, N.J.S.A. 2C:35-10(a)(3); two counts of third-degree possession of CDS with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7; first-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(10)(a); fourth-degree possession of a prohibited weapon, N.J.S.A. 2C:39-3(d); and first-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25.

after observing defendant place two large duffel bags in his van. Defendant was arrested when the officers detected the odor of raw marijuana emanating from the van, and consented to a search of his van and home, leading to the seizure of the marijuana and other evidence that formed the evidential basis for the charges.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE TRIAL COURT ERRONEOUSLY DENIED [DEFENDANT'S] MOTION TO SUPPRESS EVIDENCE SEIZED WITHOUT A WARRANT AND RELATED MOTION TO CONFIRM AND REVEAL THE IDENTITY OF THE [CI] AND THE APPELLATE DIVISION SHOULD REVERSE THE TRIAL COURT'S DECISION AND SUPPRESS THE PHYSICAL EVIDENCE IN THIS CASE.
>
> POINT II
>
> THE TRIAL COURT ERRONEOUSLY DENIED [DEFENDANT'S] MOTION FOR RECONSIDERATION AFTER THE DEFENSE RECEIVED CRITICAL INFORMATION IN THE FORM OF A TRANSCRIPT OF THE TELEPHONE CALL BETWEEN [DEFENDANT] AND THE CI ON THE DATE OF [DEFENDANT'S] ARREST.

We reject these contentions and affirm.

I.

A-4485-16T1

Preliminarily, we agree with the State that, other than the denial of his suppression motion, when defendant entered an unconditional guilty plea, he waived his right to appeal any other adverse determination, including his motion to compel the State to disclose the CI's identity, and his motion for reconsideration of that decision. "[T]he failure to enter a conditional plea under Rule 3:9-3(f) generally bars appellate review of non-Fourth Amendment constitutional issues." State v. J.M., 182 N.J. 402, 410 (2005). "Our rules provide for three exceptions to the general rule of waiver[,]" none of which apply to the other adverse decisions defendant now seeks to challenge on appeal. State v. Knight, 183 N.J. 449, 471 (2005). See State v. Robinson, 224 N.J. Super. 495, 498-99 (App. Div. 1988) (explaining that under the rules, notwithstanding a guilty plea, a defendant may appeal "from the denial of his motion to suppress as permitted by [Rule] 3:5-7(d), from the denial of admission into pretrial intervention pursuant to [Rule] 3:28(g), and, with consent of the court and approval of the prosecutor, from any other pre-trial order when the issue is preserved, [Rule] 3:9-3(f)").

Neither is this one of those "limited situations where it would result in an injustice to strictly adhere to the requirements of the rule[.]" J.M., 182 N.J. at 402, 410 (citing State v. Gonzalez, 254 N.J. Super. 300, 304 (App. Div. 1992)).

Thus, because defendant failed to preserve his right to appeal any other pre-trial orders, only his challenge to the legality of the search and seizure of evidence "automatically survive[s] the entry of a guilty plea" and is properly before us. State v. Greeley, 178 N.J. 38, 50-51 (2003).

During the suppression hearing, conducted over the course of three non-consecutive days, the State presented Monmouth County Prosecutor's Office Detective Jose Goncalves as its sole witness. Goncalves, who had been involved in "[h]undreds" of narcotics investigations during his law enforcement career, testified that on March 11, 2013, while he was on assignment at the New Jersey field office of the United States Drug Enforcement Agency (DEA), Special Agent Terrance Dunlap of the DEA's New York field office contacted his office. Dunlap advised a superior officer that defendant was a suspected "bulk-level distributor of marijuana." According to Dunlap, a CI with whom he had worked with in the past had provided information that defendant was transporting marijuana to distribution locations in "large[-]size duffel bags, almost like hockey[-]size duffel bags." Dunlap stated that based on the CI's tip, DEA agents had conducted surveillance of defendant and had observed him making exchanges with high-level marijuana traffickers who were the targets of a drug investigation in New York. Additionally, Dunlap had personally conducted an

"overhear" of a March 13, 2013 telephone conversation between defendant and the CI, during which the CI arranged to purchase marijuana from defendant the following day, March 14, 2013.

After receiving this information, on the day of the pre-arranged sale, a task force, comprised of officers from the DEA, the Monmouth County Prosecutor's Office, and the Middletown Police Department, "conducted surveillance" of defendant's home, located in Port Monmouth. At approximately 7:00 a.m. on March 14, the task force stationed undercover vehicles outside defendant's home and conducted aerial surveillance from a helicopter. While under surveillance, after loading two "large[-]size weighted duffel bag[s]" from his garage into a black Sierra pick-up truck parked in his driveway, defendant went back inside his house. Approximately thirty minutes later, defendant came back outside, transferred the duffel bags from the pick-up truck to a red Dodge van in his driveway, and returned to his house. A few minutes later, defendant came outside a third time and drove away in the red Dodge van.

While task force officers followed him, defendant drove a "very short distance" from his home, stopped to scan the area by "looking around aimlessly in many different directions[,]" and then continued driving. After defendant resumed driving, Goncalves directed Middletown Corporal Gerald Weimer, who

was in uniform and driving a marked police car, to conduct a motor vehicle stop of defendant's van. At approximately 11:17 a.m., Weimer pulled defendant over, asked him for his driving credentials, and instructed him to exit the van. When Goncalves arrived at the scene, he immediately detected "[a] very strong odor of marijuana" "emanating from [defendant's] van." Goncalves approached defendant and informed him that he was stopped because law enforcement had received information that he was "involved in criminal activity[,]" and had observed defendant moving "two large duffel[-]size bags" between vehicles at his home. As Goncalves spoke to defendant, he "could also smell marijuana" on him.[3]

Thereafter, Goncalves advised defendant of his Miranda[4] rights by reading "a Miranda warning waiver card" to defendant, who "waived his rights" and agreed to talk to the officers. Defendant also read and signed "a consent to search form" after Goncalves reviewed it with him. Goncalves read the consent form to defendant aloud, informing him of his right "to refuse to allow police to conduct the search," to "revoke [his] consent to search at any time," to "stop the

---

[3] At Goncalves' request, a K-9 unit responded to the scene to assist with the investigation, but the result of the unit's involvement was not revealed during the hearing.

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

search at any time[,]" and "to be present while the search [was] conducted." Defendant initialed next to each of these rights, and next to the section indicating that he had "given []his permission voluntarily of [his] own free will without coercion, fear, or threat." The consent form, which was executed approximately forty minutes after the motor vehicle stop, specifically authorized the search of defendant's residence, the red Dodge van, and the black Sierra pick-up truck.

In the ensuing search, inside the two large duffel bags in the red Dodge van, the officers found "bulk marijuana . . . wrapped in clear plastic." At his home, defendant, who was neither restrained nor handcuffed, led the officers to the basement where they found "bulk marijuana," "hashish," "a large amount of U.S. currency," drug "paraphernalia," "three weapons[,]" and other contraband. In the basement, defendant showed the officers "a wall shelf with a lever," which opened up a part of a bookshelf, revealing a hidden compartment where officers found "numerous duffel bags," "bins," and other containers filled with marijuana and hashish. The officers also recovered a handgun and a shotgun from the hidden compartment. Additionally, the officers found a safe inside the hidden compartment, which they opened after defendant gave them the code, and found cash and a Derringer handgun with a defaced serial number inside. In another area of the basement, the officers found another safe with cash inside.

8

In total, the officers seized approximately 394 pounds of marijuana and over $762,000 in cash from defendant's basement. After the search, defendant was transported to Middletown police headquarters, and again advised of his Miranda rights. Defendant waived his rights and gave a video recorded statement to police in which he acknowledged consenting, knowingly and voluntarily, to the search of his home and vehicles, he admitted owning and possessing all the evidence seized, and he admitted operating a narcotics distribution business.

Following the hearing, on April 27, 2015, the motion judge denied defendant's suppression motion. In a comprehensive and reasoned written opinion, the judge found Goncalves to be a credible witness based on his "demeanor." According to the judge, "[Goncalves] was honest and very straightforward throughout his testimony[,]" which was "clear, candid, and convincing." As a result, the judge made detailed factual findings consistent with Goncalves' account. The judge also recounted at length the governing principles and applicable case law, ultimately concluding that the motor vehicle stop and subsequent consent search were lawful.

Beginning with the motor vehicle stop, the judge found that "Dunlap . . . provided New Jersey authorities with particularized information about

[d]efendant, which included his name, address, [and] physical description," as well as the fact that "defendant was observed meeting with high-level bulk marijuana traffickers and would transport marijuana in large duffle bags." The judge described the information received from Dunlap as "very specific" and determined that "the level of detail" provided to Dunlap by the CI, including "[d]efendant's home address, physical description, [and] types of bags . . . carried," as well as "the prior meetings that [the CI] had with [d]efendant," demonstrated that the CI had "a reliable 'basis of knowledge.'"[5] Additionally, the judge determined that the CI's information was "subsequently corroborated

---

[5]  The judge also rejected defendant's argument that the overhear evidence provided by Dunlap of the CI's conversation arranging the March 14, 2013 purchase of marijuana from defendant violated the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act), N.J.S.A. 2A:156A-1 to -137. The judge reasoned that Dunlap obtained the evidence "acting 'in the exercise of federal jurisdictional power, pursuant to federal authority[,] and in accordance with federal standards[,]'" see State v. Mollica, 114 N.J. 329, 350 (1989), and "gathered [the] evidence . . . in compliance with the consensual interception provision pursuant to [18 U.S.C. § 2511(c)]." According to the judge, "[a]s such, Agent Dunlap was not subject to the Wiretap Act." See State v. Minter, 116 N.J. 269, 281 (1989) (holding New Jersey Wiretap Act "does not specifically regulate wiretaps . . . by federal law enforcement officials because the provisions requiring law enforcement officers to obtain prior approval . . . apply only to state officials"). As previously discussed, because defendant entered an unconditional guilty plea, his claims that Dunlap's "overhear" of his conversation with the CI violated the Wiretap Act are not properly before us and will not be considered. Rule 3:5-7(d) does not automatically preserve the right to appeal from "an adverse pre[-]trial ruling on a statutory violation of the [Wiretap Act]." State v. Keegan, 188 N.J. Super. 471, 475 (App. Div. 1983).

by the observations made by the Task Force through surveillance" of defendant. The judge found that drawing "on his years of experience and participation in more than 100 narcotics investigations," Goncalves determined that defendant's "conduct was consistent with illegal activity[,]" thereby giving rise to "a reasonable . . . and articulable suspicion" to justify stopping defendant's vehicle.

According to the judge, after conducting the investigatory stop, the "overwhelming odor of marijuana emanating from . . . [d]efendant and . . . [his] van" "gave rise to a well-grounded suspicion that [d]efendant committed the criminal offense of possessing a large quantity of marijuana" and that "additional contraband may [have been] present." As a result, the judge determined that because there was "probable cause to arrest . . . [d]efendant," prolonging defendant's detention to continue the investigation by securing defendant's consent to search was justified.

Turning to the ensuing consent search, after applying the factors articulated in State v. King, 44 N.J. 346, 352-53 (1965), the judge concluded defendant knowingly and voluntarily consented to the search of his vehicles and home, leading to the lawful seizure of the evidence. The judge explained:

> In addition to the documentation of [d]efendant's valid consent by way of executed form and video recording, the totality of the circumstances established [d]efendant's consent was voluntary. Defendant was

not handcuffed or under arrest at the time he consented. His consent was not preceded by a refusal to consent. He did not deny his guilt before providing consent. Defendant also cooperated by affirmatively assisting law enforcement authorities with the search of his residence. As such, it is evident that [d]efendant's consent was knowing and voluntary, and the consent was valid.

Thereafter, defendant moved for reconsideration of the denial of the suppression motion, asserting that "new evidence ha[d] come to light." Specifically, defendant presented the transcript of the conversation between defendant and the CI, which he had obtained through discovery in defendant's related case in New York. Claiming that he had identified the CI as "Fritz," defendant argued that the State should confirm the CI's identity so he could "call 'Fritz' as a witness in a re-opened [suppression m]otion."

On May 24, 2016, in a written decision, the judge determined defendant's motion was untimely because it was "filed . . . far more than [twenty] days after" the entry of the order denying the suppression motion. The judge also rejected the motion on the merits. In that regard, the judge recounted that he had previously "granted [defendant's] motion and ordered the State to confirm or reveal the identity of the [CI]." However, "[t]he Appellate Division granted the State's motion [to file an interlocutory appeal] and the trial court's decision was

reversed." See State v. McArdle, No. A-2029-13 (App. Div. June 5, 2014).[6] The judge pointed out that "[e]ach of [defendant's] arguments revisit[ed] those previously argued before the trial court and the Appellate Division." The judge noted that "[t]he Appellate Division's decision clearly state[d] that the State did not [need to] disclose the [CI's] identity and that it was not in the interest of justice to force the State to confirm defendant's belief that the informant was 'Fritz.'" Thus, the judge concluded "there [was] no new evidence . . . that would require reconsideration of . . . defendant's motion to suppress evidence." The judge entered a memorializing order and this appeal followed.

## II.

Our review of the trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported

---

[6] In reversing the trial court, we explained that "defendant's claim to already know the identity of the CI" did "not justify disclosure" in the absence of "a purposeful waiver [of the Rule 516 privilege] on the State's part." McArdle, slip op. at 11-12; N.J.R.E. 516. We also determined defendant failed to make "any showing, much less 'a strong showing' of need for the CI's identity" given the CI's "marginal and tangential role in connection with the search of defendant's car and home" as well as the fact that "defendant was not charged with any offense arising from the CI's limited engagement." Id. at 13 (quoting State v. Milligan, 71 N.J. 373, 387 (1976)).

by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Robinson, 200 N.J. at 15 (alteration in original) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo." State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

Applying a de novo standard of review, "[w]e review this appeal in accordance with familiar principles of constitutional law." State v. Robinson, 228 N.J. 529, 543 (2017). "Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Minitee, 210 N.J. 307, 318 (2012). Searches and seizures conducted without a warrant, "particularly in a home, are

presumptively unreasonable" and "must be subjected to particularly careful scrutiny." State v. Edmonds, 211 N.J. 117, 129 (2012) (quoting State v. Bolte, 115 N.J. 579, 583, 585 (1989)). As such, "[t]he State bears the burden of proving by a preponderance of the evidence," id. at 128, that such searches and seizures are justified by a "'well-delineated exception[]' to the warrant requirement." State v. Shaw, 213 N.J. 398, 409 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)).

Under one such exception, law enforcement officers may lawfully stop a motor vehicle and detain the occupants on less than probable cause in order to investigate suspicious conduct. State v. Stovall, 170 N.J. 346, 356 (2002). Such an "investigatory stop" is permissible "if, based on the totality of the circumstances, the officer had a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." Ibid.; see also State v. Carty, 170 N.J. 632, 639-40 (2002). The State bears the burden of demonstrating, by a preponderance of the evidence, that it possessed sufficient information to give rise to the requisite level of suspicion. State v. Pineiro, 181 N.J. 13, 19-20 (2004).

Whether reasonable and particularized suspicion exists is a fact-sensitive inquiry, and courts should consider the "totality of circumstances surrounding

the police-citizen encounter." State v. Coles, 218 N.J. 322, 343 (2014) (quoting State v. Privott, 203 N.J. 16, 25 (2010)); see also State v. Mann, 203 N.J. 328, 338 (2010); State v. Nishina, 175 N.J. 502, 516-17 (2003). The officer's experience and knowledge, as well as the facts available to the officer at the time of the encounter, are circumstances relevant to the court's determination. See Pineiro, 181 N.J. at 22. Likewise, courts are required to give weight to the "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

However, "inarticulate hunches" and "subjective good faith" are insufficient to justify a warrantless search and seizure. State v. Maryland, 167 N.J. 471, 487 (2001) (quoting Arthur, 149 N.J. at 8). "Rather, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" Ibid. (alteration in original) (quoting Arthur, 149 N.J. at 8). "Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate, so long as the officer maintains an objectively reasonable belief that the collective circumstances are consistent with criminal conduct." Nishina, 175 N.J. at 511.

"In the event that known facts are not the result of an officer's observations, the court[] must assess the reliability of the source of information to ascertain whether reasonable suspicion exists."  Byrnes, N.J. Arrest, Search & Seizure, § 14:2-1 (2018-2019).  Thus, when officers conduct an investigatory stop based on a CI's tip, the court must assess the tip's reliability under the totality of the circumstances.  State v. Smith, 155 N.J. 83, 93 (1998).  If the court finds the tip was reliable, it may give rise to reasonable suspicion sufficient to justify the stop.  See State v. Birkenmeier, 185 N.J. 552, 561-62 (2006).  In evaluating the reliability of a tip, a CI's "'veracity' and 'basis of knowledge' are two highly relevant factors under the totality of the circumstances."  State v. Zutic, 155 N.J. 103, 110 (1998) (quoting Smith, 155 N.J. at 93).  Neither factor, in and of itself, is indispensable to a finding of reliability, and "a strong showing" in one of the factors, or "some other indicia of reliability[,]" may compensate for "[a] deficiency" in the other.  Id. at 110-11 (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

"An informant's veracity may be established in a variety of ways."  Id. at 111.  For instance, a CI's "past reliability will contribute to the informant's veracity."  Ibid.  If, on the other hand, an "informant does not identify the basis of [his or her] knowledge," the court may infer "a reliable basis of knowledge"

A-4485-16T1

from "the level of detail and amount of hard-to-know information disclosed in the tip." Ibid. "[T]he nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source." Smith, 155 N.J. at 94. A court can also infer knowledge from the informant's prediction of "hard-to-know future events[,]" id. at 95, and "independent corroboration of hard-to-know detail in the informant's tip may . . . greatly bolster the tip's reliability." Zutic, 155 N.J. at 111.

Here, the judge determined the CI had a reliable basis of knowledge based on the level of detail in the CI's tip. Further, through their surveillance of defendant, as well as Dunlap's observation of defendant making exchanges with high-level marijuana traffickers in New York, the task force officers were able to confirm and corroborate details indicating that the CI's knowledge came from a trustworthy source. Under these circumstances, the judge's determination that there was reasonable articulable suspicion to justify the motor vehicle stop is amply supported by the record, and the judge's legal conclusion is unassailable. Further, the judge's conclusion that the strong odor of marijuana emanating from defendant and his van during the lawful investigatory stop provided probable cause to arrest is equally sound. See State v. Walker, 213 N.J. 281, 290 (2013) (holding that the smell of marijuana "constitutes probable cause 'that a criminal

offense ha[s] been committed and that additional contraband might be present'" (alteration in original) (quoting Nishina, 175 N.J. at 515-16)); State v. Myers, 442 N.J. Super. 287, 297-304 (App. Div. 2015) (holding that officers smelling the odor of marijuana emanating from the defendant's car gave officer probable cause to justify his arrest).

Defendant argues that because Dunlap did not testify at the hearing, as the State had previously represented during its interlocutory appeal of the trial court order compelling the release of the CI's identity, the information provided to Goncalves was not reliable because it was hearsay. However, "[h]earsay may constitute probative evidence . . . 'so long as a substantial basis for crediting the hearsay is presented[,]'" as occurred here. Zutic, 155 N.J. at 110 (quoting State v. Novembrino, 105 N.J. 95, 111 (1987)). Coming from a fellow officer, Dunlap's information regarding his "overhear" of the phone conversation between defendant and the CI setting up the March 14, 2013 sale was presumptively reliable. See State v. Infante, 116 N.J. Super. 252, 254 (App. Div. 1971) (explaining that when an officer conducts an "overhear" of a telephone call and hears both ends of the call, the content of the call is "within the detective's personal knowledge and not the result of information conveyed to him"). Equally reliable was Dunlap's observations of defendant meeting and

A-4485-16T1

making exchanges with suspected drug traffickers in New York. See United States v. Ventresca, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.").

Defendant also argues that the officer's stop of his vehicle was unlawful because he did not observe defendant commit any motor vehicle violations. While reasonable and articulable suspicion that a driver has committed a motor vehicle infraction is sufficient to justify a stop, State v. Locurto, 157 N.J. 463, 470 (1999), it is not the only justification. Here, the CI's tip and the subsequent corroborating investigation provided ample reasonable suspicion to justify the stop of defendant's vehicle, independent of any motor vehicle violation, or lack thereof.

The other "'long-recognized' exception to the warrant requirement" implicated in this appeal is the consent search. State v. Hagans, 233 N.J. 30, 39 (2018) (quoting State v. Coles, 218 N.J. 322, 337 (2014)). In order to be valid, consent must be voluntary, which is "a factual question to be determined from the relevant circumstances." State v. Koedatich, 112 N.J. 225, 264 (1988). The State bears the burden of proving "that the individual giving consent knew that he or she 'had a choice in the matter.'" Hagans, 233 N.J. at 39 (quoting Carty,

20

170 N.J. at 639). Specifically, "one required element of proof is that the consenting party must know that he has the right to decline consent." Birkenmeier, 185 N.J. at 564 (citing State v. Johnson, 68 N.J. 349, 354 (1975)). Thus, "[t]he lynchpin to voluntary consent 'is whether a person has knowingly waived [his or her] right to refuse consent to the search.'" Hagans, 233 N.J. at 39 (quoting State v. Domicz, 188 N.J. 285, 308 (2006)). In that regard, our Supreme Court has provided "guideposts to aid a trial judge" in evaluating whether consent was voluntary. King, 44 N.J. at 353.

According to the Court, factors that indicate coerced consent include: (1) the consenting individual was under arrest; (2) the individual consented despite a denial of guilt; (3) the individual refused initial requests for consent; (4) "the subsequent search resulted in a seizure of contraband" that the consenting individual "must have known would be discovered"; and (5) the accused gave consent while in handcuffs. Id. at 352-53. Factors that tend to indicate voluntary consent include: (1) the consenting individual "had reason to believe the police would find no contraband"; (2) the consenting individual admitted guilt before consenting to the search; and (3) the consenting individual affirmatively assisted the investigating officers. Id. at 353.

A-4485-16T1

A consent search following a lawful motor vehicle stop is valid when the officer seeking consent to search has a "reasonable and articulable suspicion to believe that [the defendant] has engaged in, or is about to engage in, criminal activity." Birkenmeier, 185 N.J. at 564 (alteration in original) (quoting Carty, 170 N.J. at 647). "[U]nless there is a reasonable and articulable basis beyond the initial valid motor vehicle stop to continue the detention after completion of the valid traffic stop, any further detention to effectuate a consent search is unconstitutional." Carty, 170 N.J. at 647. The requirement of reasonable and articulable suspicion "serves to validate the continued detention associated with the search." Birkenmeier, 185 N.J. at 564.

Here, after reviewing the executed consent form and defendant's video recorded statement, the judge determined defendant voluntarily consented to the search of his home and vehicles. The judge's decision is amply supported by the record, and his legal conclusion is sound. Further, as in Birkenmeier, "by the time the police asked defendant for his consent to search, the police not only had a reasonable and articulable suspicion of wrongdoing, but that suspicion had blossomed into probable cause[,]" ibid., which is a higher standard than reasonable suspicion. Stovall, 170 N.J. at 356. Here, when Goncalves requested defendant's consent, there was probable cause to believe defendant had engaged

in criminal activity based on the strong odor of marijuana emanating from defendant and his van.

Finally, defendant argues the court "erroneously denied [his] motion for reconsideration." We disagree. Under Rule 4:49-2, a court "may reconsider final judgments or orders within twenty days of entry." Lee v. Brown, 232 N.J. 114, 126 (2018). Although Rule 4:49-2 does not expressly apply to criminal practice, courts have nevertheless applied its standards to motions for reconsideration in criminal actions. See State v. Wilson, 442 N.J. Super. 224, 233 n.3 (App. Div. 2015), rev'd on other grounds, 227 N.J. 534 (2017); see also State v. Puryear, 441 N.J. Super. 280, 294-95 (App. Div. 2015) (applying Rule 4:49-2 and Rule 1:7-4(b) to a trial court's decision to grant reconsideration on its earlier decision on a motion to suppress).

Reconsideration is "a matter within the sound discretion of the [c]ourt," Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)), and will not be set aside unless the trial court abused its discretion. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016), aff'd, 231 N.J. 135 (2017). A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney

Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

"[G]rounds for reconsideration are generally limited[,]" as "[t]he proper object of reconsideration is to correct a court's error or oversight." Puryear, 441 N.J. Super. at 294; see also Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Further, reconsideration "is designed to seek review of an order based on the evidence before the court on the initial motion, [Rule] 1:7-4, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Additionally, reconsideration is "not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion[.]" Palombi, 414 N.J. Super. at 288. Rather, courts should grant reconsideration motions only when either: "(1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria, 242 N.J. Super. at 401); see also R. 4:49-2.

Here, the judge correctly denied defendant's motion for reconsideration because it was untimely, because defendant simply sought to reargue an issue previously decided in the trial court and on appeal, and because defendant was merely dissatisfied with the outcome. We discern no abuse of discretion in the judge's determination warranting our intervention because defendant relied on inappropriate bases for reconsideration. To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25