888 A.2d 1283

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. BRUCE
BIRKENMEIER, DEFENDANT–RESPONDENT.

Argued October 11, 2005—Decided January 19, 2006.

*Christopher A. Alliegro*, Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey*, Attorney General of New Jersey, attorney).

*Mark F. Casazza* argued the cause for respondent (*Rudnick, Addonizio & Pappa*, attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal requires that we determine, under the circumstances presented, the propriety of a vehicle stop and the searches that followed. Defendant Bruce Birkenmeier asserts that, given the quantum of information possessed by the police at the time, the police were required to obtain a search warrant before stopping and searching his car and thereafter securing consent to search his house. The State argues that there was no requirement that the police secure a prophylactic search warrant, that the police had reasonable suspicion to stop defendant's car and, once stopped, that there was probable cause to authorize the search of the car's contents and to justify the consent search of the defendant's home. Based exclusively on a stipulated record consisting of the police reports and the direct and cross-examination of the supervising investigating officer, the trial court denied defendant's motion to suppress because the corroborated information from a reliable confidential informant provided reasonable suspicion to stop defendant's car, and, once stopped, the odor of marijuana in the car provided both probable cause to search the passenger compartment of the car and proper justification for the consent search of defendant's home. The Appellate Division, however, reversed and remanded, holding that the confidential informant

information was neither verified nor reliable and, hence, could not sustain the stop and subsequent search.

We hold that, under the circumstances presented, the information presented by the confidential informant, once corroborated by the observations of the police, provided reasonable suspicion to stop defendant's car. We also hold that, once the car was stopped lawfully and the odor of marijuana detected by the police, there was probable cause and exigent circumstances to search the passenger compartment of defendant's car. Finally, we hold that, once the police lawfully discovered the marijuana in the passenger compartment, there was reasonable suspicion to support the request for defendant's consent to search his home, a consent that was freely and voluntarily given. We, therefore, reverse the judgment of the Appellate Division.

I.

A.

In early April 2002, Narcotics Detective Gary Friedhoff of the Monmouth County Prosecutor's Office met with a confidential informant. This informant previously had provided information to Friedhoff that led to the seizure of a large quantity of cocaine and weapons and a resulting arrest, and the separate seizure of a substantial amount of marijuana also with a resulting arrest. The informant provided the name, address and physical description of defendant, together with the make, model and license tag number of defendant's automobile. The informant explained that defendant was "involved in a large scale narcotic operation to include the distribution of marijuana" and that defendant "sells large quantities of marijuana from his residence and makes frequent trips into Long Branch to distribute his product."

At approximately 3:00 p.m. on April 5, 2002, the informant telephoned Friedhoff and informed him that defendant would be making a large marijuana delivery that afternoon. Specifically, the informant advised Friedhoff that defendant "would be leaving

his residence at approximately 4:30 p.m. and would be delivering approximately 30 pounds of marijuana" and that defendant "utilizes a laundry tote bag to transport the marijuana." Based on that information, Friedhoff contacted both fellow members of the Narcotics Strike Force of the Monmouth County Prosecutor's Office as well as detectives of the Long Branch Police Department to organize a surveillance of defendant's residence. Friedhoff requested that all responding police personnel meet him at a prearranged location in Deal, some six blocks from defendant's residence.

On his way to the prearranged location, Friedhoff drove past defendant's home and observed a car matching the description given to him by the informant parked at defendant's residence. Once at the prearranged location, Friedhoff assigned separate responsibilities to each officer present. At 3:30 p.m., the police officers proceeded to their respective assigned locations and placed defendant's residence under surveillance.

Precisely as earlier described by the informant, at 4:30 p.m. defendant was observed "leaving his residence with a large laundry tote bag and plac[ing] the bag on the passenger side of the vehicle [earlier identified by the informant and corroborated by Friedhoff]." Defendant entered the vehicle and, also as described by the informant, headed into Long Branch. Along the way, unmarked police cars bracketed defendant's car, with Friedhoff driving the lead car, followed by defendant who was followed by Detective DiGiovanni, also of the Monmouth County Prosecutor's Office Narcotics Strike Force. Once on Woodgate Bridge in Long Branch, Friedhoff stopped his car, causing defendant to stop and DiGiovanni, who also stopped, activated his emergency lights. The two detectives, Friedhoff and DiGiovanni, approached defendant and removed him from his car. Friedhoff "observed a large laundry type tote on the passenger side and smelled a very strong odor of marijuana."

Friedhoff secured the laundry bag from defendant's car and, upon inspection, discovered three white plastic bags, each contain-

ing an undisclosed number of "zip lock" bags that in turn contained what appeared to be, and later was confirmed as, approximately thirty-five pounds of marijuana. Based on that discovery, defendant was placed under arrest, and was advised that he was the subject of a narcotics investigation. Defendant elected to cooperate with the investigation and stated that he possessed an additional approximately twenty pounds of marijuana back at his residence. Although defendant ultimately was unwilling to sign a written consent to search form, it is undisputed that defendant at least twice granted oral consent for the search of his home.

In the company of the other officers, defendant led Friedhoff back to defendant's home and into a second floor spare bedroom. Once there, defendant opened a closet and handed a black duffel bag to Friedhoff which contained approximately eleven more "zip lock" bags totalling approximately twenty pounds of marijuana. The officers also seized a scale. Friedhoff then transported defendant to the Long Branch Police Headquarters.

B.

In September 2002, the Monmouth County Grand Jury returned a three-count indictment charging defendant with fourth-degree possession of a controlled dangerous substance (marijuana), in violation of *N.J.S.A.* 2C:35–10a(3); first-degree possession of a controlled dangerous substance (marijuana) with intent to distribute, in violation of *N.J.S.A.* 2C:35–5b(10)(a); and second-degree possession of a controlled dangerous substance (marijuana) with intent to distribute while on or within 500 feet of a public housing facility, a public park, or a public building, in violation of *N.J.S.A.* 2C:35–7.1. In November 2002, defendant moved to suppress the approximately thirty-five pounds of marijuana seized as a result of the stop and subsequent search of his car, and the additional approximately twenty pounds of marijuana seized as a result of the consent search of his home.

On April 4, 2003, the trial court heard defendant's suppression motion. By stipulation, the police reports were accepted into

evidence. The State then presented the direct testimony of Friedhoff, limited to two areas: the information provided by and concerning the confidential informant, and defendant's consent to search his home. During the cross-examination of Friedhoff, defendant elicited the basis of the reliability of the confidential informant:

Q. Now, getting back to the informant. It sounds like, based on your direct testimony that this was a solid informant?

A. Yes.

Q. That he had proved reliable in the past?

A. That's correct.

Q. That not only had he given you information but you actually were able to follow up on that information and make two arrests. Correct?

A. That's correct.

Q. One of Cocaine and weapons?

A. That's correct.

Q. Which would have been considered a major arrest. Correct?

A. That is correct.

Q. And then another case involving Marijuana. Was that a large amount of Marijuana?

A. Yes, it was.

Q. And was the information that the informant gave you in those cases right on the money with respect to what you later developed?

A. Yes.

Later returning to the issue of the confidential informant's reliability, Friedhoff testified on cross-examination as follows:

Q. Okay. So, let's go back then. Did you feel that the informant himself was reliable?

A. Absolutely.

Q. And that informant had given you reliable information in the past that you had used to make arrests. Correct?

A. Absolutely.

Q. And as you had said before, it had always been right on the money?

A. Absolutely.

Q. And in this situation the informant told you that [defendant] was going to be leaving his residence in Long Branch at about four thirty and at that time he was going to have approximately 35 pounds of Marijuana to be delivered to some location in Long Branch?

A. That's correct.

Q. And you felt that based upon how successful this informant had been with you in the past, that you needed to act on that?

A. Well, there was—

Q. That you intended to act on that?

A. I was—

Q. Right?

A. —intending to act on surveillance which is part of the operation.

Addressing directly whether the information he received from the confidential informant, standing alone, was sufficient to support the probable cause needed to sustain a search warrant, Friedhoff was clear:

Q. Now, you would agree would you not, that the information that the informant had given you would have been sufficient probable cause in order to apply for a search warrant?

A. Absolutely not.

Q. No question about that?

A. Absolutely not.

. . . .

Q. . . . . I think you did testify though that you felt based upon the information that you had that that was sufficient probable cause in order to get a warrant in this case.

THE COURT: He said no.

A. I said not. I said absolutely not.

Q. Oh, you mean from the information that you got—

A. Just from the information that I got from a confidential informant? Absolutely not. I wouldn't apply for a search warrant for that information, absolutely.

At the conclusion of the evidentiary hearing, the trial court denied defendant's motion to suppress. As noted by the trial court, defendant did not contest the validity of the initial stop of his car. Instead, focusing solely on the quantum of information provided by the confidential informant and the expiration of one and one-half hours from the time the informant relayed his tip to Friedhoff and the time defendant was stopped, "[d]efendant claim[ed] that the warrantless search of defendant's vehicle and home is unconstitutional because the police had sufficient time to obtain a valid search warrant." The trial court rejected that argument, holding that "the informant's tip was not sufficiently corroborated until the defendant walked out of his house with a

laundry tote, got in his car and drove away" and, hence, there was no basis on which to seek, much less procure, a search warrant.

Three days later, on April 7, 2003, defendant entered a *retraxit* plea pursuant to *R.* 3:9–3(f) to the negotiated charge of second degree possession of a controlled dangerous substance (marijuana) with intent to distribute, in violation of *N.J.S.A.* 2C:35–5b(10)(b), preserving the denial of his motion to suppress for appellate review. On June 20, 2003, the trial court sentenced defendant to a seven-year term of imprisonment, a six-month driver's license suspension, and imposed all of the mandatory monetary penalties. The trial court, however, stayed the execution of the sentence and allowed defendant to remain free on bail pending the prosecution of his appeal.

## C.

In an unreported decision, the Appellate Division reversed the trial court's denial of defendant's motion to suppress and remanded the matter to the trial court. Couching the issues presented as "whether there was probable cause at [the time the police officers observed defendant leave his home and enter his car]" and "whether the information from the confidential informant was adequate," the panel reasoned that

> there is no assertion that defendant was driving erratically or committing a motor vehicle violation or that the police had any reason to stop defendant other than the informant's tip for which the indicia for reliability had not been satisfied. The sole basis for the stop was that at the time predicted by the confidential informant defendant exited his home with a laundry bag and traveled in the general direction predicted by the confidential informant. Although the informant here was not anonymous, the basis of his knowledge has never been disclosed. There was nothing in defendant's conduct to give rise to a reasonable and articulable suspicion that a crime had been or was about to be committed. In short, there having been no legitimate basis for the stop, the evidence seized as a result of the stop should have been suppressed.

We granted the State's petition for certification, 182 *N.J.* 430, 866 *A.*2d 986 (2005), and, because the Appellate Division incorrectly fused the requirements for an investigatory stop based on

reasonable suspicion with the probable cause required for a search, we now reverse the judgment of the Appellate Division.

## II.

### A.

■ It is conceded that the stop of defendant's car was performed without a warrant. That alone, however, does not end the inquiry. Here, it is undisputed that the stop occurred after a confidential informant, who had previously provided information that led to two "major" drug and weapons seizures and two arrests, provided particularized information concerning defendant: defendant's name; defendant's address; defendant's physical description; the make, model and license tag number of defendant's car; the fact that defendant would be leaving his home at 4:30 p.m. to make a marijuana delivery; and the fact that defendant would be carrying the drugs in a laundry tote bag. Acknowledging that this information standing alone was insufficient to satisfy the probable cause requirement necessary for the issuance of a search warrant, the police placed defendant's home under surveillance. As the informant predicted, the police observed defendant leaving his home at 4:30 p.m., carrying a laundry tote bag, and driving away in the car identified by the confidential informant. Once corroborated, the confidential informant's information gave rise to reasonable and articulable suspicion justifying an investigatory stop of defendant.[1]

■ "An officer does not need a warrant to make [an investigatory] stop if it is based on 'specific and articulable facts which,

---

[1] Because the informant's information, once corroborated, provided the reasonable and articulable suspicion required to justify an investigatory stop, the Appellate Division's reasoning that "[a]lthough the informant here was not anonymous, the basis of his knowledge has never been disclosed[,]" and, hence, the information provided was insufficient to give rise to a reasonable suspicion sufficient to justify the initial stop of defendant is relevant only to whether probable cause existed and is irrelevant to the presence of the reasonable and articulable suspicion needed to justify an investigatory stop.

taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." *State v. Rodriguez*, 172 *N.J.* 117, 126–27, 796 *A.2d* 857 (2002) (citing *Terry v. Ohio*, 392 *U.S.* 1, 21, 88 *S.Ct.* 1868, 1880, 20 *L.Ed.2d* 889, 906 (1968)). We have explained that reasonable suspicion requires

> some minimal level of objective justification for making the stop. Its application is highly fact sensitive and, therefore, not readily, or even usefully, reduced to a neat set of legal rules. Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate, so long as the officer maintains an objectively reasonable belief that the collective circumstances are consistent with criminal conduct.
>
> [*State v. Nishina*, 175 *N.J.* 502, 511, 816 *A.2d* 153 (2003) (citations and quotation marks omitted).]

Gauging its rightful place in the continuum of detentions subject to constitutional scrutiny, we have held that "[r]easonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest." *State v. Stovall*, 170 *N.J.* 346, 356, 788 *A.2d* 746 (2002).

Applying *Nishina's* "collective circumstances" test here, the confidential informant's tip, once corroborated by the observations made by the police, provided sufficient reasonable suspicion to detain and conduct an investigatory stop of defendant and, therefore, the initial stop of defendant's car was proper. We now turn to the consequences of that stop.

## B.

■ Once defendant's car was stopped, Friedhoff observed a laundry tote bag on the front passenger's seat of defendant's car and "smelled a very strong odor of marijuana." That observation and smell further corroborated the confidential informant's tip and, in the circumstances, triggered application of the automobile exception to the warrant requirement, thereby allowing a lawful search of defendant's car.

We recently reaffirmed that "the automobile exception [to the constitutional requirement of a warrant as a condition precedent to a lawful search] depends on the satisfaction of two require-

ments: the existence of probable cause and exigent circumstances, and that the determination regarding those elements must be made on a case-by-case basis." *State v. Dunlap*, 185 *N.J.* 543, 549, 888 *A.*2d 1278 (2006) (citing *State v. Cooke*, 163 *N.J.* 657, 671, 751 *A.*2d 92 (2000)). Applying the case-by-case analysis required by *Dunlap* and *Cooke* here, there is no doubt that Friedhoff's observation of the laundry tote bag on the front passenger's seat of defendant's car and detection of "a very strong odor of marijuana" sufficed to provide the probable cause and exigent circumstances needed for the invocation of the automobile exception and the ensuing search of the passenger compartment of defendant's car.[2] *State v. Nishina*, 175 *N.J.* 502, 516–18, 816 *A.*2d 153 (2003) (citing *State v. Vanderveer*, 285 *N.J.Super.* 475, 479, 667 *A.*2d 382 (App.Div.1995) ("New Jersey courts have recognized that the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.' ")).

## C.

 Defendant's last objection, that the search of his home was unlawful because the request for consent to search was not preceded by probable cause, remains. We note at the outset that defendant's premise is incorrect: the existence of probable cause is not a condition precedent to a consent search. It has long been

---

[2] Defendant never challenged whether exigent circumstances existed in order to trigger the automobile exception. Instead, in his motion to suppress, defendant argued only that the police had sufficient time and sufficient probable cause to secure a search warrant before stopping defendant. Thus, defendant argues, the failure to secure a warrant was fatal to the State's cause. For that reason, defendant readily conceded that there was probable cause to search the car and, hence, reasonable suspicion or probable cause to trigger a request for a warrantless consent search of his home. At argument before this Court, however, defendant alleged that, even if the initial investigatory stop was proper, there was insufficient probable cause to search either his car or his home. Because the issues were not raised below, we could conclude our analysis at this point. *R.* 1:7–2; *R.* 2:10–2. However, for the sake of completeness, we will address separately the search of both defendant's car and home.

the law in New Jersey that the State bears the burden of proving that consent to search was voluntary and that one required element of proof is that the consenting party must know that he has the right to decline consent. *State v. Johnson*, 68 *N.J.* 349, 346 *A.*2d 66 (1975). As *State v. Carty*, 170 *N.J.* 632, 647, 790 *A.*2d 903, *modified on other grounds*, 174 *N.J.* 351, 806 *A.*2d 798 (2002), makes clear in respect of non-custodial motor vehicle searches,[3] "consent searches following a lawful stop of a motor vehicle should not be deemed valid under *Johnson* unless there is reasonable and articulable suspicion to believe that [the defendant] has engaged in, or is about to engage in, criminal activity." We adopted that standard because "[t]he requirement of reasonable and articulable suspicion is derived from our State Constitution and serves to validate the continued detention associated with the search." *Ibid.* Also, in this analysis, we are mindful of defendant's sworn testimony of the events: "I was pulled over by the police and they found Marijuana in my car. And they asked if we could go back to my house and I gave them verbal permission and gave them everything I had in my house." Defendant's "everything I had in my house" consisted of an additional approximately twenty pounds of marijuana and a scale.

As noted earlier, by the time the police asked defendant for his consent to search, the police not only had a reasonable and articulable suspicion of wrongdoing, but that suspicion had blossomed into probable cause. Hence, defendant's last objection must also fail.

### III.

For the foregoing reasons, we hold that, under the circumstances presented, the confidential informant's information, once corroborated by the observations of the police, provided the

---

[3] For purposes of this analysis, we assume, explicitly without deciding, that the requirements of *State v. Carty* apply to a request for consent to search something other than a motor vehicle addressed to a party in custody.

reasonable and articulable suspicion required for an investigatory stop of defendant's car. Once the car was stopped lawfully and the odor of marijuana detected by the police, probable cause and exigent circumstances [4] existed so as to trigger the automobile exception to the warrant requirement and permit the lawful search of the passenger compartment of defendant's car. Finally, once the police lawfully discovered the marijuana in the passenger compartment of the car, there was a sufficient basis to support the request for defendant's consent to search his home, which consent, by defendant's own admission, was freely and voluntarily given.

The judgment of the Appellate Division is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ, and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE, and RIVERA–SOTO—7.

*Opposed*—None.

---

[4] *See supra,* 185 *N.J.* at 563 n. 2, 888 *A.*2d at 1290 n. 2 (2006).