NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3414-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

 v.

PEDRO J. GOMEZ,

 Defendant-Appellant.

_____________________________________________________

 Submitted May 9, 2017 – Decided May 31, 2017

 Before Judges Fisher and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Law Division, Salem County, Indictment
 No. 14-12-0674.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Rochelle Watson, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 John T. Lenahan, Salem County Prosecutor,
 attorney for respondent (Derrick Diaz,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant pleaded guilty to third-degree possession of a

controlled dangerous substance, N.J.S.A. 2C:35-10a, following the
denial of his motion to suppress evidence. He appeals the denial

of the motion, contending:

 I. BECAUSE THE CONFIDENTIAL INFORMANT'S TIP
 LACKED THE REQUISITE BASIS OF KNOWLEDGE TO
 PROVIDE REASONABLE SUSPICION TO STOP MR.
 GOMEZ'S CAR, THE EVIDENCE MUST BE SUPPRESSED.

 We disagree and affirm.

 At the hearing, Detective Petrutz, who the trial court found

to have extensive training and experience in the investigation of

offenses related to controlled dangerous substances, testified

that he received two telephone calls from an informant. The

informant advised the detective during the first call that a

Hispanic man, driving a silver, four-door Ford, was going to

deliver heroin to the Pilot Truck Stop at 11:15 a.m. In the second

call, the informant described the man as: approximately five feet,

seven inches tall, 130 pounds, with brown eyes, black hair, long

braids and various tattoos. The informant also said the man would

be wearing a pink baseball cap, a pink shirt and blue jeans.

 The detective set up a surveillance location at the truck

stop; the informant was also present. Petrutz described the truck

stop as a high crime area known for prostitution, narcotics and

weapons possession. When a silver Ford entered the truck stop at

approximately 11:15 a.m., the informant confirmed that the driver,

 2 A-3414-15T2
the defendant, was the same person he previously described to

Petrutz.

 A passenger exited the Ford and began to look around the

parking areas. Petrutz believed he was conducting counter-

surveillance to detect the presence of law enforcement. The

passenger subsequently walked to the truck stop convenience store.

Defendant also left the vehicle and walked toward the store. He

met the passenger as he left the store and, together, they walked

back to and entered the car. Neither was observed in possession

of any packages, nor did they did buy gas.

 The detective approached the suspect vehicle in his police

unit with his overhead lights activated. The detective admitted

the lights were a signal to defendant that he was not free to

leave. The detective asked the driver to exit the vehicle.

Defendant complied; a search ensued. The drugs with which

defendant was charged were discovered during the search.

 Our standard of review gives deference to the trial court's

findings of fact, "so long as those findings are supported by

sufficient credible evidence in the record." State v. Rockford,

213 N.J. 424, 440 (2013) (citations omitted). "Those findings

warrant particular deference" because of the perspective the judge

gains from seeing and hearing testimony and the judge's "feel" for

the case. Ibid. "[W]e may only consider whether the motion to

 3 A-3414-15T2
suppress was properly decided based on the evidence presented at

that time." State v. Jordan, 115 N.J. Super. 73, 76 (App.Div.),

certif. denied, 59 N.J. 293 (1971).

 Our analysis of the propriety of the investigatory stop

balances the competing interests between "a citizen's privacy and

freedom of movement" and "proper law enforcement activities."

State v. Davis, 104 N.J. 490, 504-05 (1986). Investigative stops

are justified, even absent probable cause, "if the evidence, when

interpreted in an objectively reasonable manner, shows that the

encounter was preceded by activity that would lead a reasonable

police officer to have an articulable suspicion that criminal

activity had occurred or would shortly occur." Id. at 505. Courts

are to determine whether the totality of the circumstances gives

rise to an "articulable and particularized" suspicion of criminal

activity, not by use of a strict formula, but "through a sensitive

appraisal of the circumstances in each case." Ibid.

 In performing a stop, a law enforcement officer cannot act

on a mere hunch. State v. Gamble, 218 N.J. 412, 428 (2014). "[T]he

level of suspicion required is 'considerably less than proof of

wrongdoing by a preponderance of the evidence,' and 'obviously

less' than is necessary for probable cause." Ibid. (citation

omitted).

 4 A-3414-15T2
 The law enforcement officer's perspective is a factor in

assessing whether a reasonable, articulable suspicion is

established. State v. Nishina, 175 N.J. 502, 511 (2003). We

consider if the totality of the circumstances known to the officer,

in light of his or her experience and knowledge, taken together

with "rational inferences drawn from those facts," justify the

limited restriction on an individual's liberty during an

investigatory stop. Davis, supra, 104 N.J. at 504.

 A tip from a confidential informant can establish reasonable

suspicion. An informant’s tip is also analyzed under the totality

of the circumstances. State v. Smith, 155 N.J. 83, 92, cert.

denied, 525 U.S. 1033, 119 S. Ct. 576, 142 L. Ed. 2d 480 (1998).

"Two factors generally considered to be highly relevant, if not

essential, that are included in the 'totality of the circumstances'

are the informant's 'veracity' and the informant's 'basis of

knowledge.'" Id. at 93 (citing Illinois v. Gates, 462 U.S. 213,

238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)). The

Smith Court adopted the flexible analysis espoused in Gates:

 [N]either of these factors, though relevant,
 is an essential element under the totality of
 the circumstances test . . . [A] deficiency
 in one of the . . . factors "may be compensated
 for, in determining the overall reliability
 of a tip, by a strong showing as to the other,
 or by some other indicia of reliability.

 [Ibid. (citation omitted).]

 5 A-3414-15T2
 The evidence relating to both factors establishes that the

informant's tip to Petrutz was sufficiently reliable to justify

the investigatory stop.

 An informant's veracity can be established by providing

reliable information to law enforcement. Id. at 93-94. Petrutz

"used" this informant on seven prior occasions. Each tip resulted

in an arrest; the detective did not know if any of the arrests led

to convictions. The informant's veracity was not diminished

because Petrutz did not provide details about the informant's

previous tips. Our Supreme Court has "in the past accepted a

similarly undetailed endorsement of an informant as satisfying the

veracity requirement." State v. Novembrino, 105 N.J. 95, 123

(1987) (citation omitted).

 The informant's basis of knowledge was not revealed; it can

be established, however, not only by "direct evidence of the manner

in which the informant learned of the criminal activity" but,

also, "by a prediction of hard-to-know future events." State v.

Williams, 364 N.J. Super. 23, 34-35 (App. Div. 2003).

 We agree with the trial judge that State v. Birkenmeier, 185

N.J. 552 (2006), is analogous to this case. The confidential

informant in Birkenmeier gave police:

 defendant's name; defendant's address;
 defendant's physical description; the make,

 6 A-3414-15T2
 model and license tag number of defendant's
 car; the fact that defendant would be leaving
 his home at 4:30 p.m. to make a marijuana
 delivery; and the fact that defendant would
 be carrying the drugs in a laundry tote bag.

 [Id. at 561.]

The Court held that the information supplied by the informant was

sufficient to give rise to a reasonable and articulable suspicion

to justify a stop after it was corroborated. Ibid.

 The information contained in the tip to Petrutz was not as

specific as that provided by the informant in Birkenmeier. The

tip did not provide the defendant's name, the model and plate

number of the vehicle, or the type of container in which the drugs

would be packaged for transportation.

 Petrutz did, however, corroborate the color and make of the

vehicle, as well as defendant's race, sex, height and the articles

of clothing described by the informant. While that information

may not be "hard to know," the time defendant entered the truck

stop and the description of defendant's distinctive pink hat and

shirt are details that establish the informant's familiarity with

the defendant and his criminal activity. Significantly, the

informant also positively identified defendant and the vehicle at

the scene.

 7 A-3414-15T2
 An additional factor that must be taken into account is the

seasoned detective's knowledge that the truck stop was an area

rife with drug activity.1

 This was not an anonymous tip. Information was provided by

a proven informant to an experienced detective. That information

was corroborated by the detective and the informant. Once the

informant's tip was corroborated, Petrutz had reasonable suspicion

to conduct a stop to further investigate criminal wrongdoing.

 Affirmed.

1
 We do not give any weight to the detective's conclusion that the
passenger alighted from the car and conducted counter-surveillance
of the area. The trial judge found the detective’s conclusion
that the passenger’s actions were more "than just a casual look
around" to be "a stretch."

 8 A-3414-15T2