**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2532-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

WILLIAM RICHARDSON,

      Defendant-Appellant.

_____

Argued November 8, 2018 – Decided August 30, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-04-0742.

Susan Lee Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Lee Romeo, of counsel and on the briefs).

William Kyle Meighan, Senior Assistant Prosecutor, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, on the brief).

PER CURIAM

Defendant William Richardson was indicted by an Ocean County grand jury and charged with third degree possession of heroin, N.J.S.A. 2C:35-10(a)(1), third degree conspiracy to possess heroin, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-10(a)(1), second degree possession of heroin with intent to distribute, in a quantity of one-half ounce or more, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2), and second degree conspiracy to distribute and/or possess with intent to distribute heroin, in a quantity of one-half ounce or more, N.J.S.A. 2C:5-2, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2).

After the trial court denied his motion to suppress, defendant entered into a negotiated agreement with the State through which he pled guilty to second degree possession of heroin with intent to distribute, in a quantity of one-half ounce or more. In return, the State agreed to dismiss the remaining counts in the indictment and recommend the court sentence defendant to an extended term of eleven years, with forty-six months of parole ineligibility. On December 9, 2016, the court sentenced defendant in accordance with the plea agreement.

In this appeal, defendant challenges the legality of the initial motor vehicle stop and the evidence seized by the police pursuant to a search warrant.

A-2532-16T4

We affirm. We derive the following facts from the record developed before the trial court.

On November 6, 2013, Ocean County Prosecutor's Office Detective David Fox and Detective Ruiz[1] met with a confidential informant (CI) who claimed a man named William Richardson, a/k/a "I-Shine" was distributing "large quantities of heroin in the Ocean and Monmouth County area." In a Special Operations Group (SOG) report written by Fox that same day, he documented that the CI described Richardson as "an extremely large black male, approximately 40 years of age, approximately 6' tall, and weighing approximately 350 pounds[,]" who was at the time residing in the City of Long Branch. The CI claimed Richardson used a number of cars to distribute the heroin, including a Mazda Protégé and a silver Mercedes. The CI also provided the registration number of the Mazda and the temporary registration of the Mercedes.

Fox noted in the report that the CI had purchased heroin from Richardson "on numerous occasions in the past" and was willing to call him on his cellphone to arrange to buy more heroin at a particular location. According to the CI,

_____

[1] Detective Ruiz's first name is not disclosed in the appellate record. Moreover, except for Detective Fox, all of the law enforcement officers who participated in this case are referred to only by their last names.

Richardson was known as a "large scale heroin distributor" who he had personally seen "in possession of multiple bricks of heroin in the past."

At approximately 9:30 a.m. that day, the CI called Fox to advise him that Richardson had agreed "to deliver 30 bricks of heroin for approximately $5,000.00 and would deliver the heroin to the Kennedy Fried Chicken [restaurant] located on Kennedy Boulevard in Lakewood." Fox specifically emphasized the reliability of this CI by noting that he/she had worked with SOG detectives in prior investigations that led "to the arrest of 10 individuals for a large quantity of heroin and cocaine."

Detectives from Ocean and Monmouth counties who make up the SOG met to brief everyone on this matter. They agreed to set up surveillance points in a particular location on Morris Avenue in Long Branch. At around noon that day, Fox and Ruiz met the CI at a prearranged location "in the Lakewood area." Fox documented that in his presence, the CI called Richardson on his cellphone. Fox wrote that Ruiz "observed and overheard the communications between [the] CI . . . and an individual the CI indicated to be William Richardson Jr aka 'I-Shine' confirming the drug transaction that was [to] take place in Lakewood Township." Richardson also confirmed he would bring with him "30 bricks of heroin."

Fox wrote in his report that at approximately 12:15 p.m., SOG Detective Dennis saw an individual matching Richardson's physical description leave an apartment located on Morris Avenue in Long Branch and drive away in a 2003 Mazda Protégé with a license plate that matched the registration numbers given by the CI. SOG detectives followed the Mazda as it headed toward Neptune, although they lost sight of the car "momentarily . . . in the area of Marlboro Road." According to Fox, shortly after Dennis saw Richardson leave the apartment, the CI received a phone call from Richardson confirming the CI had the amount of money agreed upon and advising him/her he was on his way with the heroin.

At around 1:15 p.m., Fox saw Richardson, accompanied by an African American man, drive a car matching the description of the Mazda provided by the CI westbound on Kennedy Boulevard and past the Kennedy Fried Chicken restaurant. Detective Fox claimed he saw Richardson "look in the direction of the Kennedy Fried Chicken parking lot." Richardson drove into a parking lot located at the corner of Kennedy Boulevard, parked the car and "exited the driver's seat and looked around, up and down Kennedy Boulevard." He then saw Richardson return to the car and drive away back east on Kennedy Boulevard, past the Kennedy Fried Chicken restaurant.

A-2532-16T4

At the time the following events occurred, Detective Sergeant Hess was in the car with Fox. After following Richardson's car for an undisclosed period of time, Fox concluded he had sufficient legal grounds to conduct an automobile stop. Fox "instructed [Richardson] to pull his vehicle onto Park Place." Fox particularly noted in the report that he and Hess were wearing "clearly marked . . . police identification and police vests" when they approached Richardson. Fox told Richardson to exit the vehicle and in Hess's presence, read to him his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966). According to Fox, Richardson acknowledged he understood these rights.

Fox explained to Richardson that he "was conducting a narcotic related investigation." Fox wrote that Richardson "was extremely un-cooperative verbally" and told him: "you have no right to stop me and I have nothing in the car." At this point, Fox detained both Richardson and the passenger in the car and transported them both to the Lakewood Police Department "pending application of [a] search warrant." Fox incorporated these facts in an affidavit dated that same day that he submitted to a Superior Court Judge in support of a warrant to search Richardson's car. Fox also requested that the Ocean County Sheriff's Department send a canine unit to conduct a sniff search of the vehicle.

Richardson's car was secured by the police officers at the scene. The canine unit Sheriff's Officer reported to the SOG officers that the sniff search indicated the presence of a controlled dangerous substance. The vehicle was towed to the Ocean County Prosecutor's Office Special Operations Headquarters. Later that same day, Superior Court Judge Francis R. Hodgson, Jr., issued a search warrant to search the Mazda Protégé. At approximately 5:00 p.m., SOG officers executed the warrant. In his report, Fox and the officers found a black bag inside a cardboard box in the trunk of the car that contained "35 bricks (1,750 bags) of heroin."

Against these facts, defendant now appeals raising the following arguments.

POINT I

THE TRIAL COURT'S RULING THAT DENIED DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE SHOULD BE REVERSED BECAUSE THE DOCUMENTARY EVIDENCE ESTABALISHED, AS A MATTER OF LAW, THAT THE STATE FAILED TO MEET ITS BURDEN TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE POLICE HAD THE REASONABLE ARTICULABLE SUSPICION REQUIRED UNDER U.S. CONST. AMEND. IV AND N.J. CONST. ART. I, ¶ 7 TO STOP DEFENDANT'S CAR.

POINT II

THE TRIAL COURT'S RULING THAT DENIED DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE SHOULD BE REVERSED BECAUSE THE STATE PRESENTED NO EVIDENCE TO PROVE, AS IT WAS REQUIRED TO DO, THAT THE DOG SNIFF DID NOT UNREASONABLY PROLONG THE STOP IN VIOLATION OF U.S. CONST. AMEND. IV AND N.J. CONST. ART. I, ¶7.

POINT III

THE TRIAL COURT'S DENIAL OF DEFENDANT'S APPLICATION FOR A TESTIMONIAL HEARING ON HIS SUPPRESSION MOTION SHOULD BE REVERSED BECAUSE THE COURT APPLIED THE WRONG STANDARD, FROM AN INAPPLICABLE UNITED STATES SUPREME COURT CASE, THEREBY REQUIRING DEFENDANT TO MEET A HIGHER BURDEN OF PROOF THAN THAT IMPOSED BY RULE 3:5-7 AND NEW JERSEY CASE LAW.

We reject these arguments and affirm. A police officer does not need a warrant to stop a motor vehicle provided the stop is based on specific and articulable facts which, taken together with rational inferences derived therefrom, give the officer a reasonable suspicion of criminal activity. State v. Rodriguez, 172 N.J. 117, 126-27 (2002). Here, Fox stopped defendant's car based on the information provided by the CI that defendant was in possession of a large quantity of heroin which he intended to distribute to him/her in exchange

for $5,000. The propriety of the motor vehicle stop thus turns on the reliability of the information provided by the CI.

Information provided by a confidential informant can be the basis for a lawful motor vehicle stop provided it is corroborated by the officer. State v. Birkenmeier, 185 N.J. 552, 562-63 (2006). Fox corroborated the CI's information in a variety of ways: (1) defendant's physique matched the physical description given by the CI; (2) defendant's cars matched the make, model, and registration numbers given by the CI; (3) Detective Ruiz corroborated the content of the cellphone conversation between the CI and defendant that established the quantity of the heroin, the price, and the location of the point of distribution; and (4) the CI was well-known to law enforcement officers and had provided reliable information in past cases that resulted in successful prosecutions. Judge Hodgson relied on this same information which Fox presented in his sworn affidavit in support of his application for a warrant to search defendant's Mazda Protégé. Judge Hodgson found this sworn information established probable cause to issue the search warrant.

We next address the validity of the search warrant. Judge Rochelle Gizinski denied defendant's application for an evidentiary hearing to challenge the validity of the search warrant under Franks v. Delaware, 438 U.S. 154

(1978). The judge found defendant did not present any evidence to establish a prima facie case of deliberate misrepresentation by Detective Fox. We agree. In State v. Howery, our Supreme Court explained the burden of proof a defendant must satisfy to challenge the facial validity of a search warrant issued by an independent magistrate:

> First, the defendant must make a "substantial preliminary showing" of falsity in the warrant. Franks, at 681. In keeping with the purpose of the exclusionary rule as a deterrent to egregious police conduct, the defendant cannot rely on allegations of unintentional falsification in a warrant affidavit. He [or she] must allege "deliberate falsehood or reckless disregard for the truth," pointing out with specificity the portions of the warrant that are claimed to be untrue. These allegations should be supported by an offer of proof including reliable statements by witnesses, [Id. at 171], and they must be proved by a preponderance of the evidence. Finally, the misstatements claimed to be false must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause. Ibid.
>
> [80 N.J. at 567-68]

Here, defendant did not present any evidence that comes close to meeting this standard. Mere unsupported allegations are not enough to overcome the warrant's presumption of validity. Finally, we find no legal or factual grounds to remand this matter for the court to conduct an evidentiary hearing to

10

determine how long it took the Sheriff's Department canine unit to respond to a request for a sniff search. The concerns expressed by the Court in <u>State v. Dunbar</u>, 229 N.J. 521, 532-34 (2017) are not relevant here. Defendant was taken into custody by Detective Fox at the scene of the motor vehicle stop based on the probable cause explained in detail by Fox in the SOG report. Furthermore, defense counsel did not raise this issue as a basis for relief when he argued the motion to suppress before Judge Gizinski. Under these circumstances, the interests of justice do not require that we address this issue. <u>R.</u> 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2532-16T4