**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3899-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSHUA MCMILLIAN,
a/k/a BUDAH, and FNU LNU,

     Defendant-Appellant.

_____

Submitted May 17, 2022 – Decided July 19, 2022

Before Judges Fisher and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 16-10-1572, 19-04-0622 and 19-04-0623.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (David M. Liston, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from the trial court's November 4, 2019 order denying his motion to suppress. The trial judge found police officers had probable cause to search the trunk of defendant's vehicle after smelling raw marijuana and finding a small amount of marijuana shake while searching the interior of the car.[1] Because the officers did not completely search the interior of defendant's car before proceeding to open the locked trunk and the officer did not testify that the shake found in the car could not be the source of the smell of marijuana, we reverse.[2]

Defendant was charged in an indictment with: fourth-degree obstructing administration of law, N.J.S.A. 2C:29-1(a); two counts of third-degree possession of a Controlled Dangerous Substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3); two counts of fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3; second-degree

[1] During the suppression hearing, the testifying officer explained that "[s]hake is small pieces of marijuana, that basically come off of the original piece, and when you are attempting to either roll marijuana cigarettes or package it, it's not always all going to go in the bag, so it scatters throughout the area."

[2] Defendant also challenges his sentence. We do not address those issues in light of our decision to reverse the suppression order.

A-3899-19

unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree prohibited weapons and devices—large capacity ammunition magazine, N.J.S.A. 2C:39-3(j); fourth-degree prohibited weapon and devices—hollow nose/dum-dum bullets, N.J.S.A. 2C:39-3(f)(1); and second-degree possession of a firearm while engaged in CDS distribution activity, N.J.S.A. 2C:39-4.1(a). He was charged in a subsequent indictment with two second-degree certain persons not to have weapon, N.J.S.A. 2C:39-7(b)(1). In addition, defendant had pending charges from Ocean County.

Defendant moved to suppress the evidence found during a search of the trunk of a vehicle he was driving following a traffic stop. We derive the following facts from the testimony presented at the suppression hearing and a review of the body camera footage.

While on patrol, Edison police officer Joseph DePasquale observed a car that was crossing slightly over the lane into oncoming traffic and then moving back into its own lane. DePasquale and his partner, Steven Nappe, followed the car into a parking lot and then conducted a motor vehicle stop. The interaction was recorded on the officers' body cameras.

DePasquale approached the driver's side of the car and requested the driver's license—the driver of the vehicle was identified as defendant. Nappe

3

went to the passenger's side.  Defendant told police he was not the owner of the vehicle and gave the registered owner's name.  DePasquale stated he observed "small pieces of marijuana shake scattered throughout the back seat of the vehicle" and "rolling papers underneath the driver's seat."  He also detected the odor of raw marijuana coming out of the car.

As DePasquale returned to his patrol car to check defendant's credentials, two other officers arrived—Parenty and Paone.  Before returning to defendant's car, DePasquale turned his microphone off and spoke with another officer.  When asked about the reason for muting his microphone on his body camera, DePasquale stated that he did so to explain

> to the other officers who arrived on-scene what [he] was going to do next, because at that point [he] had already detected the odor of marijuana and [he] did a look-up of the information, . . . and based off of that, [he] knew [he] was going to search the vehicle.

DePasquale asked defendant to get out of the vehicle and then searched him.  Defendant told the officer that he had smoked marijuana an hour earlier at a friend's house and he was wearing the same clothes.  DePasquale replied, "I can smell it coming off your clothes" and "because of that I'm gonna search you a little better and then I'm gonna search the car."  While searching defendant, DePasquale found rolling papers on his person.

A-3899-19

After searching defendant, DePasquale and Parenty searched the vehicle. After entering the passenger's front side of the vehicle to begin the search, Parenty stated, "It smells in here too." DePasquale and Parenty then muted their microphones.

DePasquale searched the front and back of the car on the driver's side, while Parenty searched the front passenger side. However, Parenty never searched the back seat on the passenger's side or even opened the back passenger side door. After DePasquale pushed up the rear seat arm rest, his camera showed very small pieces of marijuana "shake" in the back seat. A box of rolling papers is also seen in the center console.

DePasquale testified that, "throughout the search of the vehicle, as [he] went towards the rear of the vehicle, once [he] folded down the armrest, that's when [he] was able to detect the odor of marijuana to be at its strongest point throughout the entire stop."

DePasquale then described his subsequent actions:

> [THE STATE:] . . . At this point has your search of the interior of the vehicle concluded?
>
> [DEPASQUALE:] For the front compartments, yes.
>
> [THE STATE:] And after you finished searching that portion of the car, what did you do?

> [DEPASQUALE:] After that, I got back out of the vehicle and I approached the defendant and notified him that I would need his car key to search the remainder of the vehicle.
>
> [THE STATE:] And what was [defendant]'s reaction when you asked for his keys to search his trunk?
>
> [DEPASQUALE:] [Defendant] was cooperative and he provided me with the keys. It wasn't until I had started walking towards the trunk of the vehicle when he became irate . . . .

DePasquale's and Parenty's microphones were muted while Parenty retrieved the car keys from defendant. Nappe's microphone was on. When Parenty asked defendant if he had the keys, defendant handed them to the officer. However, as DePasquale walked to the back of the vehicle to open the trunk, defendant became visibly and audibly upset. Nappe's microphone remained on for the following exchange before defendant was placed in the patrol vehicle.

Defendant said, "Hold on, hold on . . . . why are you going in the trunk for? . . . . You have to ask for probable cause." Parenty responded, "The odor of marijuana" was the probable cause. DePasquale stated, "We have stuff that shows you used marijuana in the car." Defendant remained agitated, stating the officers did not find anything in the car and, therefore, they could not go into the trunk. After two minutes of defendant objecting to the officers' entry into the locked trunk, they placed him in the back of a patrol car.

6

After opening the trunk and lifting the liner, the officers found a "sandwich bag containing marijuana, one grinder, one tied off bag containing cocaine, . . . . three bricks of heroin broken down into five bundles each, and an additional four bundles of heroin totaling 190 bags," a cutting agent for cocaine and heroin, and a "Smith and Wesson [forty] caliber handgun with an extended magazine which was loaded with [twenty] hollow point bullets." The officers then arrested defendant.

During the suppression hearing, DePasquale stated that not all marijuana smells the same, explaining that in some instances he would "step out of [his] vehicle and . . . already . . . smell the odor of marijuana," but the search of the car might only reveal five grams of marijuana. Whereas in other instances, there would only be a "faint odor" of marijuana even though a subsequent search of the car resulted in the discovery of 150 grams of marijuana. He said that the smell "depends on how [the marijuana] is packaged, how long it's been sitting in that area." "If it's vacuum sealed, it's going to be a little bit harder to sm[e]ll. I[f] it's in a sandwich bag and it's been sitting in that area, it's had time to . . . make that whole area smell like the marijuana." He also said the quality of the marijuana can affect the strength of its smell.

A-3899-19

In its November 4, 2019 order, the trial court found the police lawfully stopped defendant's car after observing a motor vehicle violation.  The court stated further:

> And finding Patrolman DePasquale to be credible based on his testimony given at the hearing . . . that the smell of marijuana emanated from the vehicle and during the course of the vehicle search he found marijuana shake in the backseat armrest, <u>and his testimony that this amount of marijuana could not be the source of the smell,</u> could reasonably lead his search to the trunk of the vehicle to locate the source of the marijuana smell.

> (emphasis added)

The court denied the suppression motion.

Defendant subsequently pleaded guilty to third-degree possession of a CDS with intent to distribute and second-degree possession of a firearm while engaged in CDS distribution activity.  He also pleaded guilty to the certain persons offense.  The guilty pleas resulted in a probation violation of a prior 2016 conviction.

Defendant was sentenced on the violation of probation to three years imprisonment with no parole ineligibility, to run concurrent to the sentence of five years imprisonment with two and a half years of parole ineligibility for possession with intent to distribute and concurrent to five years of imprisonment with a five year period of parole ineligibility on the certain persons offense and

A-3899-19

consecutive to seven years of imprisonment with a three and a half year period of ineligibility for possessing a firearm during a CDS distribution. These sentences all were consecutive to a five-year term of imprisonment with a forty-two-month period of parole ineligibility for the unrelated Ocean County convictions.

Defendant presents the following points for our consideration:

POINT I
AFTER HAVING FOUND A SMALL AMOUNT OF MARIJUANA IN THE PASSENGER COMPARTMENT POLICE UNCONSTITUTIONALLY EXTENDED THE WARRANTLESS SEARCH TO THE TRUNK.

POINT II
THE MATTER MUST BE REMANDED FOR RESENTENCING.

A. The Sentencing Court Failed to Articulate Its Reasons For Finding Aggravating Factors Three and Nine[.]

B. The Court Sentenced [Defendant] Consecutively to the Governing Sentence in Ocean County Without Considering the Overall Fairness of the Aggregate Sentence, Pursuant to State v. Torres.

Our scope of review of the grant or denial of a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). We will "uphold the factual findings underlying the trial court's decision so long as those findings are

9                                                                    A-3899-19

supported by sufficient credible evidence in the record."  State v. Carrion, 249 N.J. 253, 279 (2021) (citation omitted).  We defer to those factual findings because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'"  State v. Elders, 192 N.J. 224, 244 (2007) (citing State v. Johnson, 42 N.J. 146, 161 (1964)).

We also "defer to [the] trial court['s] credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  State v. Mordente, 444 N.J. Super. 393, 397 (App. Div. 2016) (quoting State v. Locurto, 157 N.J. 463, 474 (1999)).

Therefore, the "trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction."  State v. Nelson, 237 N.J. 540, 551-52 (2019) (quoting Robinson, 200 N.J. at 15).  However, our review of a trial court's conclusions of law is de novo.  State v. Diaz, 470 N.J. Super. 495, 513 (App. Div. 2022).

"Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches and seizures."  State v. Minitee, 210 N.J. 303, 318 (2012).  Thus, searches and seizures conducted without a warrant "are presumptively invalid as contrary to

the United States and the New Jersey Constitutions." State v. Pineiro, 181 N.J. 13, 19 (2004) (citing State v. Patino, 83 N.J. 1, 7 (1980)). The State has the burden to prove by a preponderance of the evidence "that the search falls within one of the few well-delineated exceptions to the warrant requirement." Id. at 19 (citations omitted).

In State v. Witt, 223 N.J. 409 (2015), our Supreme Court stated that police officers may conduct a warrantless, nonconsensual search during a lawful roadside stop in situations where: (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) "the circumstances giving rise to probable cause are unforeseeable and spontaneous."

Prior to the legalization of marijuana in New Jersey,[3] in certain circumstances, our courts have "recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." State v. Walker, 213 N.J. 281, 290 (2013) (internal quotation marks omitted) (quoting State v. Nishina, 175 N.J.

---

[3] The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56 (the Act), became effective on February 22, 2021. Under the Act, an odor of marijuana cannot create a reasonable suspicion or probable cause to conduct a warrantless search. N.J.S.A. 2C:35-10c(a). In a recent decision, this court held that the Act is to be applied prospectively. State v. Gomes, ___ N.J. Super. ___, ___ (App. Div. 2022) (slip op. at 27).

502, 515-16 (2003)); State v. Birkenmeier, 185 N.J. 552, 563 (2006); State v. Mandel, 455 N.J. Super. 109, 114-15 (App. Div. 2018); State v. Myers, 442 N.J. Super. 287, 304 (App. Div. 2015). When the persistent smell of unburned or raw marijuana is detected, probable cause has been found to support even a warrantless search of a vehicle's trunk when an officer is unable to "pinpoint the source" of that odor. State v. Kahlon, 172 N.J. Super. 331, 338 (App. Div. 1980); see State v. Guerra, 93 N.J. 146, 149-50 (1983) (finding probable cause to justify the search of a vehicle's trunk when the officer searching the vehicle concluded the "strong odor of marijuana" could not have been emanating from a small suitcase within the "car's interior").

However, even if an officer has "probable cause to believe that the vehicle is carrying contraband[,] . . . the search must be reasonable in scope." Patino, 83 N.J. at 10. Although a search may first be "validly initiated, [it] may become unreasonable because of its intolerable intensity and scope." Id. at 10-11 (citing Terry v. Ohio, 392 U.S. 1, 18-19 (1968)). "The scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983) (citations omitted).

In Patino, after finding a container "six inches long and an inch in diameter" that was "half-full of green vegetation" and "a hand-rolled marijuana cigarette" and searching the remainder of the passenger compartment, the officer searched the trunk and found cocaine. 83 N.J. at 5-6. The Court found the search of the trunk unconstitutional, holding that "[a] small amount of marijuana . . . alone without other circumstances that suggest participation in drug traffic or possession of more contraband" does not allow an officer to extend his search to the trunk. Id. at 14-15. The facts did not reflect the officer smelled marijuana inside the car.

This court did consider the implications of an officer smelling marijuana in a vehicle in Kahlon. After pulling a vehicle over for traveling at a slower speed than normal on a highway, the officer asked the defendant to roll down the window. 172 N.J. Super. at 335-36. When the defendant complied, the officer "smelled an odor he believed to be burning marijuana." Id. at 336. The defendant admitted he had smoked marijuana. Ibid. After patting down the occupants of the car, the officer searched the vehicle "to determine the area from which the odor of marijuana had emanated." Ibid.

His search of the passenger compartment revealed "a half-burned marijuana cigarette . . . approximately one inch long " and, "from his training[,]

13

[he] thought the [cigarette] to be unusually large." Ibid. He also found "a clear plastic bag filled with . . . approximately 1/2 ounce of marijuana and a package of cigarette wrapping papers." Ibid. The officer arrested the defendant and continued his search of the passenger compartment. Id. at 336-37. He found nothing more, but stated he smelled a "very heavy odor of unburned marijuana." Id. at 337.

The officer then searched the trunk. There he "smelled a very heavy odor of unburned marijuana" and found "several suitcases and a cardboard box," which was not "completely" closed. Ibid. In the box was a plastic bag. Ibid. The officer said he "was positive . . . the odor of unburned marijuana" was coming from the bag. Ibid. The bag had holes in it, which the officer widened and found marijuana. Ibid. He also found a scale underneath another bag in the trunk. Ibid.

The trial court suppressed the evidence found in the trunk. Id. at 335. We reversed, finding that because the officer could not "pinpoint the source of the smell," along with the marijuana found in the passenger compartment, he could reasonably conclude the odor was coming from the trunk and, therefore, had probable cause to search the trunk for the drugs. Id. at 338.

A-3899-19

Defendant does not challenge the stop of the vehicle, or the search of his person and the passenger compartment of the car. The issue is whether the police officers had probable cause to search the trunk of the car. After reviewing the totality of the circumstances, we conclude they did not.

After viewing marijuana shake in the car, and smelling raw marijuana, the officers had probable cause to search the interior of the vehicle. Which they did. However, a review of the body camera footage reveals the officers did not complete that search prior to undertaking the warrantless search of the trunk. The officers never searched the back seat on the passenger side of the car. Therefore, DePasquale did not eliminate the possibility that the odor was coming from the passenger compartment by searching the entirety of the car. Moreover, the trial judge mistakenly found that because DePasquale testified that the small amount of marijuana in the back arm rest "could not be the source of the smell," it was reasonable for the officer to continue his search into the trunk. But DePasquale never said he could not identify the source of the smell. He never stated the odor was not emanating from the shake found in the car. And the officers did not complete the interior search of the back seat. Therefore, the officers did not have a reasonable and articulable suspicion that a crime was being committed to satisfy a finding of probable cause to extend the search to

15

the trunk. The trial judge misstated the testimony of the officer and therefore mistakenly granted the motion to suppress.

We reverse the order denying the suppression motion and vacate the conviction and sentence pertaining to this indictment. We remand to the trial court for further proceedings regarding the effect this decision may have on defendant's sentence arising out of the Ocean County conviction.

Reversed, vacated, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3899-19